**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**IRENE HECHT, on behalf of herself and all others similarly situated,**

           **Plaintiff,**

           **-against-**

**MAGNANNI, INC.,**

           **Defendant.**

           **Civil Case No.:**
           **1:20-cv-05316-MKV**

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

**MARCUS & ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:**    **(732) 695-3282**
**Email: yzelman@marcuszelman.com**
**Attorneys for Plaintiff**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT…………………………………....……....……..…1

II.  STANDARD OF REVIEW………………………………………………………2

III.  ARGUMENT……………………………....…………………………………....…..2

    A.  The Purpose Of The ADA……………………………………………………..2

    B.  Plaintiff Adequately Pleaded A Violation Of The ADA…………………………....3

    C.  Ms. Hecht's ADA and NYCHRL Claims Are Not Moot………………………7

IV.  CONCLUSION…………………………………………………………………12

# TABLE OF AUTHORITIES

*Allaire Corp. v. Okumus,*

    433 F.3d 248 (2d Cir. 2006)……………………………………………………..2

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,

    815 F.3d 105 (2d Cir. 2016)……………………………………………………..9

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,

    671 F.3d 140 (2d Cir. 2011)……………………………………………………..2

*Ashcroft v. Iqbal*,

    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………………………2

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)…………………………………2

*Campbell v. Greisberger*,

    80 F.3d 703 (2d Cir. 1996)………………………………………………………9

*City News & Novelty, Inc. v. City of Waukesha*,

    531 U.S. 278, 284, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001)………………………………..9

*Clear Channel Outdoor, Inc. v. City of New York*,

    594 F.3d 94 (2d Cir. 2010)………………………………………………………9

*Del-Orden v. Bonobos, Inc.,*

    No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)……………...4, 11

*Diaz v. Kroger Co.*,

    2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019)………………………………………………11

*Diaz v. Lobel's of New York, LLC,*

    No. 16CV6349NGGSMG, 2019 WL 3429774 (E.D.N.Y. July 30, 2019)………………..10

*Fed. Defs. of N.Y. v. Fed. Bureau of Prisons,*

    954 F.3d 118 (2d Cir. 2020)……………………………………………………..9

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.,*

    906 F.3d 215 (2d Cir. 2018)……………………………………………………..9

*Knox v. Serv. Emp. Int'l Union, Local 1000*,

    567 U.S. 298 (2012)……………………………………………………………....8

*Markett v. Five Guys Enterprises LLC*,

    No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)…………………4, 5

*Mhany Mgmt., Inc. v. Cty. of Nassau*,

    819 F.3d 581 (2d Cir. 2016)……………………………………………………..8, 9

*Nat. Res. Def. Council v. U.S. Dep't of Energy*,

    362 F. Supp. 3d 126 (S.D.N.Y. 2019)…………………………………………….9

*PGA Tour, Inc. v. Martin*,

    532 U.S. 661 (2001)……………………………………………………………..2, 3

*Roberts v. Royal Atl. Corp.*,

    542 F.3d 363 (2d Cir. 2008)……………………………………………………..3

*Sullivan v. Study.com LLC*,

    No. 18-CV-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019)………………5, 10

*Taylor v. H.Stockton-Atlanta*,

    4:20-cv-00056-TWT [Docket 22] (N.D.Ga. July 30, 2020)……………………………...10

*Thorne v. Formula 1 Motorsports, Inc.*,

    No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)………………...4, 5

*Walters v. Simply Skinny Ties, LLC*,

    2020 WL 7248346 (N.D.N.Y. Dec. 9, 2020)………………………………………………11

*Wu v. Jensen-Lewis Co.*,

    345 F. Supp. 3d 438 (S.D.N.Y. 2018)……………………………………………...5, 6


<u>Statutes and Other Sources</u>

28 C.F.R. § 36.201………………………………………………………………………2

29 C.F.R. § 1630.2(j)(3)(iii)……………………………………………………………4

42 U.S.C. § 12101(a)(1)………………………………………………………………...3

42 U.S.C. § 12101(a)(2)………………………………………………………………...3

42 U.S.C. § 12101(a)(3)………………………………………………………………...3

42 U.S.C. § 12182(a)……………………………………………………………………2

42 U.S.C. § 12182(b)(2)(A)(iii)………………………………………………………..5

75 Fed. Reg. 43460-01 (July 6, 2010)………………………………………………...5

H.R. Rep. No. 101-485, pt. 2, p. 50 (1990)……………………………………………3

S. Rep. No. 101-116, p. 20 (1989)……………………………………………………………3

*Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing*

*before the House Subcommittee on the Constitution of the House Committee on the Judiciary*,

      106th Cong., 2d Sess. 65-010 (2000)………………………………………………5

USCCAN 1990, pt. 2, pp. 303, 332…………………………………………………………...3

## I.    PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint, brought pursuant to FRCP 12(b)(1).  Irene Hecht commenced this action via the filing of a Complaint which alleged that the Defendant violated the Americans with Disabilities Act (the ADA).  As alleged in the Second Amended Complaint, the Defendant operates the website www.magnanni.com, from where it sells and distributes footwear to the general public.  Ms. Hecht maintains that the Website is not compatible with the screen-reading software used by visually-impaired individuals such as herself, and that she and the putative class members have thereby been denied the same access to the Defendant's online store as those afforded to sighted individuals.

Defendant now moves to dismiss based on a single argument: that it has since fixed the Website, rendering the case moot and depriving the Court of subject matter jurisdiction.  Notably, this is the exact same claim that the Defendant made in its pre-Motion Letter, filed on March 10, 2021.  *See,* Docket 11 (claiming that the accessibility issues with the Website were fixed months earlier).  That claim could not be true because, as alleged in the Amended Complaint, those issues persisted when Ms. Hecht returned to the Website six weeks later on April 21, 2021.  *See,* Docket 15, ¶28-29.  Nonetheless, the Defendant submits a Declaration of its employee to once again boldly claim that the Website is fixed.  As the accompanying Declaration of Robert Moody makes clear, however, that is simply not the case.  Instead, those issues persist to this very day.

The case is not moot because it not possible to determine as a matter of law, at this stage in the litigation, that (1) the accessibility barriers on Defendant's Website have been removed, and that (2) there is no chance of those accessibility issues reoccurring.  For the reasons set forth below, it is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.

## II.    STANDARD OF REVIEW.

To survive a motion to dismiss pursuant to Federal Rule 12(b) (6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006).  The same standard is applied to Motions to Dismiss filed under FRCP 12(b)(1).  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

## III.    ARGUMENT.

### A.  The Purpose Of The ADA.

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a); see 28 C.F.R. § 36.201.  As the Supreme Court has repeatedly recognized, Congress's purpose in enacting the ADA was broad: "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

In enacting the ADA, Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." 42 U.S.C. § 12101(a)(1). Moreover, "Congress found that 'historically, society has tended to isolate and

segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' " *PGA Tour*, 532 U.S. at 674-75 (quoting 42 U.S.C. § 12101(a)(2)).  Congress identified many areas of society in which individuals with disabilities faced persistent discrimination, including "employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' " *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), USCCAN 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.*

### B. Plaintiff's Claim Under The ADA.

Plaintiff's main claim in this action arises under the ADA.  Section 302(a) of Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Thus, to establish a Title III violation, a plaintiff must demonstrate "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

The first element of the *Roberts* test is easily met here.  The Amended Complaint alleges that Ms. Hecht "is visually impaired and legally blind, in that she has visual acuity with correction of less than or equal to 20 x 200."  *See,* Docket 15, ¶5.  The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  Ms. Hecht is disabled because she is substantially limited in the major life activity of seeing. *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: ... blindness substantially limits seeing").  "A legally blind person who requires screen-reading software to access the internet is disabled within the meaning of the ADA." *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, *2 (S.D.N.Y. Dec. 19, 2019).

The second element is also easily met here.  Numerous courts in this District have held that a website "is a place of public accommodation." *See e.g., Del-Orden v. Bonobos, Inc.,* 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017)("A commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access"); *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568 (S.D.N.Y. July 21, 2017)(holding that a fast food restaurant's website, was "covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute"); *Thorne,* 2019 WL 6916098, at *2.

 As noted by Judge Forrest in *Markett*, finding commercial websites to be a 'public accommodation' under the ADA also aligns with the position taken in various contexts by the Department of Justice, which is responsible for enforcing Title III. *See, Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568, fn3, <u>citing</u> *Applicability of the Americans with Disabilities*

*Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). "The DOJ's position in this regard is entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568, footnote 3.

Finally, the third *Roberts* element is met here as well. With respect to the third element, a website "is liable for 'discrimination' within the meaning of the ADA if, among other things, it fails to provide 'auxiliary aids and services' to ensure that the disabled are treated the same as other individuals." *Sullivan v. Study.com LLC*, 2019 WL 1299966, at \*3 (S.D.N.Y. Mar. 21, 2019), citing 42 U.S.C. § 12182(b)(2)(A)(iii). In *Thorne,* the plaintiff alleged that "Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links." *See,* 2019 WL 6916098, at \*3. Judge Oetken found that "these allegations, taken as true, plausibly show that Formula 1 discriminated against Thorne by denying him a full and equal opportunity to use its website." *Id.* Similar allegations were found sufficient to state a claim by Judge Ramos in *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018):

> In her complaint, Wu cites four such barriers. First, Wu alleges that graphical images on Jensen-Lewis's website lack alternative text ("alt-text") or a text equivalent. Alt-text enables screen-reading software to vocalize a description of an image to users. Second, Wu alleges that Jensen-Lewis's website has empty links that contain no text. These empty links' functionality is confusing to screen-reader users. Third, Wu alleges that the website contains redundant, adjacent links. Redundant, adjacent links go to the same URL address, resulting in additional, unnecessary navigation efforts for screen-reader users. Fourth, Wu alleges that

linked images on the website lack alt-text. Without alt-text, a user would not know what function a linked image has when he or she clicks on it.

The Court finds that these allegations, taken as true, plausibly show that Jensen-Lewis discriminated against Wu by denying her a full and equal opportunity to use its website. They are specific facts concerning Jensen-Lewis's website. Consequently, Wu has made a plausible claim under Title III of the ADA

*Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d at 443.

In this case, the allegations in Amended Complaint are far more specific than those pled in *Thorne* and *Wu.* The Amended Complaint alleges that, on March 9, 2020 and April 21, 2021, the Plaintiff visited the Defendant's website with the intention of browsing and potentially making a purchase. *See,* Docket 14, ¶¶22, 28. However, as alleged in the Amended Complaint, "many features on the Website fail to accurately describe the contents of graphical images, fail to properly label title, fails to distinguish one page from another, contain multiple broken links, contain headings that do not describe the topic or purpose, and the keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible." *See,* Docket 14, ¶25. If a Website does not accurately describe the content of a graphical image, for example, a visually impaired individual who is not fully blind may see a fuzzy image on the screen, but cannot select the image to hear his screen-reader software describe what the image depicts. *See e.g., Wu,* 345 F. Supp. 3d at 443 (explaining that "Alt-text enables screen-reading software to vocalize a description of an image to users" and finding that such allegations are sufficient to survive a motion to dismiss).

The Amended Complaint goes even further, and gives several even more specific examples of accessibility issues encountered on the Defendant's website. For example,

- Clicking on the "skip to content" link did not communicate anything to the screenreader software. *See,* Docket 15, ¶26(a).

- Plaintiff was unable to locate the "continue shopping" link on the order summary page when trying to continue shopping on the Defendant's Website. *See,* Docket 15, ¶26(b).

- The design of the Website was defective in that it was nearly impossible for the visually impaired Plaintiff to get back to her shopping cart.  *See,* Docket 15, ¶26(c).

- To get from "new arrivals" to "shoes", Plaintiff had to go through all of the items in the "new arrivals" menu first. There was no way of going directly from "new arrivals" to "shoes".  *See,* Docket 15, ¶26(d).

- The Website did not provide verbal descriptions of the products Plaintiff was attempting to purchase or peruse. *See,* Docket 15, ¶26(e).

These allegations are specific and are more than sufficient to put the Defendant on notice as to several of the exact accessibility barriers that Ms. Hecht encountered when she tried to navigate the Defendant's website.   Defendant does not claim that these allegations are insufficiently pled, but instead argues that it fixed these issues and that the Plaintiff's claims are therefore moot.  As addressed in the next section, Plaintiff very much disputes that the Defendant has remedied the accessibility issues that continue to pervade its Website to this very day.

### C.  Ms. Hecht's ADA and NYCHRL Claims Are Not Moot.

Defendant's argument is that it fixed the issues outlined in the Second Amended Complaint, and that Ms. Hecht's claims are therefore moot.  Defendant's self-serving claims about the Website being remediated – so that it can achieve an early dismissal of this action – are simply both incorrect and not credible.  Defendant has already had such claims disproven in this action. Specifically, on March 10, 2021, Defendant filed its pre-Motion Letter, claiming that the case was moot because "Magnanni voluntarily corrected the purported failure months ago".  *See,* Docket 11.  But on April 21, 2021, the Plaintiff returned to the Website to try and complete her shopping

and found that the exact same issues persisted.  *See,* Docket 15, paragraphs 28-29.  In its latest Motion to Dismiss, the Defendant just repeats its self-serving claims that any issues have been fixed, despite the Plaintiff having plainly continued to experience such issues after Defendant's last claim that the Website had been fixed.  Clearly, then, the Defendant's new claims of remediation are simply not credible, when the prior claims that Defendant made in its pre-Motion Letter have now been demonstrated to have been incorrect.

Moreover, Defendant's claims - that the Website is now accessible to visually-impaired individuals – are flatly contradicted by the fact that these accessibility issues persist to this very day.  In response to the Defendant's Motion to Dismiss, the Plaintiff hired an expert investigator to inspect and audit the Defendant's website.  As of the date of that recent inspection, <u>May 19, 2021</u>, the Plaintiff's expert swears that the same issues continue to pervade the site, which makes the site inaccessible to visually-impaired individuals.  *See,* Declaration of Robert D. Moody, pages 2-3.  On May 19, 2021, Mr. Moody also ran an audit of the Defendant's Website, which similarly reflects that accessibility barriers pervade the Defendant's Website.  *See,* Exhibit B[1].

Defendant cannot possibly have met its burden of establishing that the Plaintiff's claim is moot.  The "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  This is because "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016),

---

[1] While Defendant claimed in its pre-Motion letter that its Motion would "include certifications of its accessibility compliance" along with "an affidavit from Magnanni management regarding its compliance and intent to continue compliance" (*see,* Docket 11, at 2), Defendant does not appear to have included any such certifications or audits, such as the type that Mr. Moody submits. Instead, Defendant solely submits a self-serving Declaration of its employee in support of its Motion.  *See,* Docket 16-2.  That is it.

quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001). "Courts look at voluntary cessation of challenged conduct particularly skeptically where it appears to track the development of the litigation." *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019). *See also, Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.,* 906 F.3d 215, 224 (2d Cir. 2018)(" We also note that mootness doctrine counsels suspicion in situations in which a defendant deprives a plaintiff of her stake in the litigation").

The Second Circuit applies a two-part test to determine whether a defendant's voluntary cessation has rendered a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996). *See also, Fed. Defs. of N.Y. v. Fed. Bureau of Prisons,* 954 F.3d 118, 126 (2d Cir. 2020)("Defendants, however, cannot automatically moot this case simply by ending their unlawful conduct once sued. Instead, they must show that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur"). "This is both a stringent and a formidable burden." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (internal citations omitted). Additionally, "a claim will not be found moot if the defendant's change in conduct is merely superficial or suffers from similar infirmities as it did at the outset." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016).

Here, while the Defendant previously represented that it fixed the accessibility issues with its Website, both Ms. Hecht and Mr. Moody have found that those, and similar, accessibility issues

subsequently persisted after Defendant made that representation.  And while Defendant repeatedly

claims that it fixed its accessibility issues before the Complaint was served, it does not actually

say that it fixed these issues *before the Complaint was filed*.  Instead, its claimed 'fixes' were

clearly made in response to the filing of this lawsuit (which Defendant expressly admitted it was

aware of prior to being formally served, *see,* Docket 11 and 11-1), in an effort to simply moot out

this case, something which the Courts have traditionally viewed with suspicion and skepticism.

*See Nat. Res. Def. Council*, 362 F. Supp. at 138; *Qlik Techs., Inc.,* 906 F.3d at 224.  *See also,*

*Taylor v. H.Stockton-Atlanta,* 4:20-cv-00056-TWT [Docket 22] (N.D.Ga. July 30, 2020)(finding

it unconvincing that post-lawsuit changes to defendant's website mooted ADA lawsuit where "the

Defendant began its accessiBe subscription over a month after this action was filed, and its motion

to dismiss followed two weeks thereafter")[2].

Given that there is a clear dispute as to whether the issues raised in the Second Amended

Complaint still persist, clearly there can be no finding as a matter of law that the Defendant has

"completely and irrevocably eradicated the effects of the alleged violation".  *See e.g., Diaz v.*

*Lobel's of New York, LLC,* 2019 WL 3429774, at *6 (E.D.N.Y. July 30, 2019)(rejecting mootness

challenge and finding that "The court cannot conclude, based on the evidence before it, that

Defendant has fully rectified all access barriers in the Website or that it is absolutely clear the

Defendant cannot resume the allegedly offending conduct. The court thus finds that Plaintiff's

ADA claim is not moot, and denies Defendant's motion to dismiss under Federal Rule of Civil

Procedure 12(b)(1)"); *Sullivan v. Study.com LLC,* 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21,

2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing

---

[2] The undersigned could not locate this decision cited on Westlaw, so a copy of the *Taylor* opinion is attached as Exhibit C.  The quoted language is found on page 9 of that Decision.

certain videos on defendant's website); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018) (same, where defendant did "not provide any affirmative showing that its current website is ADA-compliant, and will remain that way, beyond asserting so and citing to the website itself"); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *11-12 (S.D.N.Y. Dec. 20, 2017) (same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access).

Defendant spends much of its Motion distinguishing cases that hurt its cause, i.e., holdings which have denied similar Motions to Dismiss on mootness grounds in ADA website cases. The only case actually cited by the Defendant in support of its position does not support a finding that the claims in this case are moot. *See,* Docket 16-1, at 10, citing *Diaz v. Kroger Co*., 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019). Specifically, the *Diaz* defendant submitted an affidavit swearing that all of the accessibility issues had been fixed, something which the *Diaz* plaintiff didn't dispute. *See Diaz,* 2019 WL 2357531 at *4 ("More to the point, Plaintiff does not dispute the factual assertions Mr. Whiting makes regarding Defendant's efforts at ADA compliance"). By contrast, in this case Ms. Hecht continued to experience those same issues months after the Defendant claims to have fixed the accessibility issues on its Website. And Mr. Moody similarly swears that those issues persist to this very day.

Instead, there is clearly a justiciable claim here as to whether the Defendant's Website continues to fail to provide the same browsing experience to visually-impaired individuals as it does to sighted individuals. As such, Defendant cannot possibly have met its burden of showing that this case is moot, and the Motion to Dismiss must be denied. *See, Walters v. Simply Skinny Ties, LLC,* 2020 WL 7248346, at *4 (N.D.N.Y. Dec. 9, 2020)(denying motion to dismiss ADA website case because "(1) Walters has established that there is a factual dispute between the parties

over whether the website continues to deny him a full and equal opportunity to enjoy the services it provides and (2) DAZI has not conclusively established that this dispute has been mooted by its voluntary conduct").

## IV.    CONCLUSION.

It is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.  Defendant claims that it fixed its Website and that the complained-of accessibility barriers will not recur.  But the facts of this case demonstrate that there is a factual dispute as to whether these issues still persist and can be expected to recur.  To wit, these accessibility barriers have recurred in Ms. Hecht's own experience, months after Defendant claims to have remedied them.  And Ms. Hecht's expert witness swears that these accessibility barriers exist to this very day.  Given this plain factual dispute, Defendant's request to dismiss this case simply cannot be granted at this stage of the litigation.

For these reasons, it is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.

Dated: May 27, 2021

                                    Respectfully submitted,

                                    /s/ Yitzchak Zelman
                                    Yitzchak Zelman, Esq.
                                    Marcus Zelman, LLC.
                                    701 Cookman Avenue, Suite 300
                                    Asbury Park, New Jersey 07712
                                    Phone:      (732) 695-3282
                                    *Attorney for the Plaintiff*
                                    *Irene Hecht*